## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CLARE MACMILLAN-BELL** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | **NO. 15-5411** |
| **PETER KANG, M.D., et al.** | : | |

### MEMORANDUM OPINION

**Savage, J.**                                                                                                        **November 19, 2015**

      Defendants Peter Kang, M.D. ("Kang") and AllBetterCare Urgent Care Center ("AllBetterCare") have moved to dismiss or transfer this medical malpractice action to the Middle District of Pennsylvania where the alleged malpractice occurred and the defendants reside. Plaintiff Clare MacMillan-Bell ("MacMillan-Bell") contends that defendant Dickinson College is a resident of this district because it is subject to personal jurisdiction here, thus establishing venue in this district under 28 U.S.C. § 1391(b)(1).

      We conclude that Dickinson College is not a resident of this district for venue purposes. Instead, it is a resident of the Middle District as are the other defendants. Therefore, we shall grant the motion to transfer the action to the Middle District of Pennsylvania.

### Factual and Procedural Background

      MacMillan-Bell, a citizen of New York and a student at defendant Dickinson College in Carlisle, Pennsylvania, alleges that she experienced lower abdominal pain and painful urination beginning on October 2, 2013.[1] The following day, she presented to defendant Dickinson College Student Health Services ("DCSHS") where she was

---

[1] Compl. ¶¶ 3, 29-30.

treated by defendant Jennifer Braund, R.N., C.R.N.P. ("Braund").[2]  After performing a physical examination and a urine test, Braund diagnosed MacMillan-Bell with a urinary tract infection, prescribed a three-day course of Ciprofloxacin, and discharged her from DCSHS.[3]

On October 7, 2013, having experienced no improvement, MacMillan-Bell contacted DCSHS and spoke to Braund, who referred her to AllBetterCare, where she was treated by Kang.[4]  Kang diagnosed MacMillan-Bell with a urinary tract infection and prescribed her Keflex.[5]  Three days later, MacMillan-Bell returned to AllBetterCare with worsening symptoms and was again treated by Kang.[6]  His examination revealed tenderness in the right lower quadrant and left lower quadrant.[7]  Kang gave MacMillan-Bell a Diflucan tablet, ordered a CT scan to rule out acute appendicitis, and diagnosed her with lower quadrant abdominal pain, urinary tract infection, and vaginitis/vulvovaginitis.[8]  Later that day, a CT scan performed at Carlisle Regional Medical Center ("CRMC") showed a perforated appendicitis with abscess formation.[9] Dr. Adam James Braze performed an exploratory laparotomy with abdominal washout and ileocecectomy.[10]

---

[2] *Id.* ¶¶ 30-31.

[3] *Id.* ¶¶ 32-34.

[4] *Id.* ¶¶ 35-37.

[5] *Id.* ¶¶ 39-40.

[6] *Id.* ¶ 41.

[7] *Id.* ¶ 43.

[8] *Id.* ¶¶ 45-46.

[9] *Id.* ¶ 47.

[10] *Id.* ¶ 50.

On October 14, 2013, MacMillan-Bell returned to CRMC with worsening abdominal pain.[11] A CT scan raised concerns for an anastomotic leak resulting from the surgery performed four days earlier.[12] Dr. Christopher Sneider performed an exploratory laparotomy, washout, takedown of ileocolic anastomosis with an end ileostomy with colonic mucous fistula.[13] MacMillan-Bell remained at CRMC for two weeks.[14] In January 2014, she underwent surgery at New York University Hospital to reverse her ileostomy.[15]

On November 7, 2014, MacMillan-Bell again presented to DCSHS with abdominal pain.[16] After being transported to AllBetterCare, she was referred to CRMC where she was seen by Dr. Sneider.[17] A CT scan revealed an ileum blockage requiring surgery.[18] At New York University Hospital, she underwent an exploratory laparotomy, lysis of adhesions, resection and recreation of ileocolic to correct an ileum obstruction created by a twisted bowel that occurred during one of the prior procedures.[19]

After MacMillan-Bell filed her complaint in this court, the moving defendants moved to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3). In the alternative, they request that the action be transferred to the Middle District of

---

[11] *Id.* ¶ 52.

[12] *Id.* ¶ 53.

[13] *Id.* ¶ 55.

[14] *Id.* ¶ 56.

[15] *Id.* ¶¶ 57-58.

[16] *Id.* ¶ 59.

[17] *Id.* ¶¶ 60-61.

[18] *Id.* ¶ 62.

[19] *Id.* ¶¶ 63-64.

Pennsylvania pursuant to 28 U.S.C. § 1406(a).  They argue that none of the defendants reside in this district and none of the acts or omissions giving rise to the complaint occurred in this district.  They contend, the proper forum is the Middle District where all the defendants are residents and a substantial part of the acts or omissions occurred.[20] MacMillan-Bell counters that Dickinson College is a resident of this district because it is subject to jurisdiction here.  She contends it regularly conducts business here by conducting athletic events, recruitment, alumni events, networking and recruiting events for current and prospective students.

## Analysis

In diversity cases, venue is govered by 28 U.S.C. § 1391(b), which provides three venue possibilities—one based on the defendant's residence, one on where the operative facts occurred, and a fall-back provision.  Venue is determined as follows: (1) where all defendants reside in the same state, the district where any defendant resides; (2) the district where a substantial part of the events or omissions giving rise to the claim occurred; and (3) where there is no other district in which the action can be brought, the district where a defendant is subject to personal jurisdiction at the time the action is commenced.  28 U.S.C. § 1391(b).  The third basis is a fall-back provision that applies only if venue is not available under (b)(1) or (b)(2).

MacMillan-Bell contends that Dickinson College is a resident of this district because it is subject to personal jurisdiction.  If Dickinson College is not subject to

---

[20] The moving defendants also argue that Pennsylvania Rule of Civil Procedure 1006(a.1) and the Pennsylvania Medical Care Accountability and Reduction of Error Act ("MCARE Act") require that this action be brought in the Middle District because a medical professional may be sued for malpractice only in the county where the plaintiff is treated.  Because we conclude that venue is not proper in this district, we do not address whether Pennsylvania's special venue rules with respect to medical malpractice actions apply.

personal jurisdiction in this district, it remains a resident of the Middle District, where all the other defendants reside. In that instance, under § 1391(b)(1), venue lies only in the Middle District. Thus, we must determine whether Dickinson College is subject to personal jurisdiction here.

In a multi-district state, like Pennsylvania, the question of where a corporate defendant resides for purposes of § 1391(b)(1) is controlled by 28 U.S.C. § 1391(d), which provides:

> For purposes of venue under this chapter, in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State . . . .

In applying § 1391(d), we conduct a personal jurisdiction analysis, treating the Eastern District of Pennsylvania as a state and Dickinson as a non-resident. *See Horizon Mktg. v. Kingdom Int'l Ltd.*, 244 F. Supp. 2d 131, 138 (E.D.N.Y. 2003); *Superior Precast, Inc. v. Safeco Ins. Co. of Am.*, 71 F. Supp. 2d 438, 443 (E.D. Pa. 1999) (characterizing the process as "a fictitious personal jurisdiction analysis").

There are two bases for personal jurisdiction, general and specific. The focus of general jurisdiction is on the relationship between the defendant and the forum, not on the relationship of the claims to the forum. *See Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 699 (3d Cir. 1990). The specific jurisdiction inquiry considers the relationship of the litigation to the defendant's contacts with the forum. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 369 (3d Cir. 2002).

MacMillan-Bell does not argue, nor could she, that Dickinson College is subject to specific jurisdiction in the Eastern District of Pennsylvania. She does not allege that

any of the treatments took place in this district.  Indeed, all of the relevant events and omissions giving rise to her claims occurred in Carlisle, Pennsylvania.

General jurisdiction exists where the non-resident has substantial, continuing and systematic contacts with the forum.  *Marten v. Godwin,* 499 F.3d 290, 296 (3d Cir. 2007).  Once these contacts are established, the defendant can be answerable for any claim even if the cause of action has no relationship to the forum.  *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.,* 149 F.3d 197, 200 (3d Cir. 1998).  Thus, general jurisdiction is not premised on conduct related to the litigation, but on the defendant's unrelated continuous and systematic contacts in the forum.

MacMillan-Bell argues that Dickinson College regularly conducts business in the Eastern District of Pennsylvania.  The activity includes intercollegiate athletic events, recruitment of student-athletes, alumni events, networking, and recruiting events for current and prospective students.

A college or university is not subject to general jurisdiction outside of the forum where its principal place of business is situated simply because it conducts some activities elsewhere.  *Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 543 (3d Cir. 1985).  Involvement in interstate collegiate sports is not a sufficient jurisdictional nexus.  *Gallant v. Trs. of Columbia Univ.*, 111 F. Supp. 2d 638, 642 (E.D. Pa. 2000) (citing *Gehling*, 773 F.2d at 543).  Enrollment and recruitment of students and solicitation of donations similarly are not sufficient.  *Corrales Martin v. Clemson Univ.*, No. 07-536, 2007 WL 4531028, at *5-6 (E.D. Pa. Dec. 20, 2007) (citing *Gehling*, 773 F.2d at 542-43).  Nor do alumni affairs and outreach suffice for general jurisdiction. *Kendall v. Trs. of Amherst Coll.*, No. 06-4983, 2007 WL 172396, at *5 (E.D. Pa. Jan. 18,

2007) (citing *Gehling*, 773 F.2d at 543). To base general jurisdiction on these types of incidental activities would subject a college or university to suit in any state.

Dickinson College's business is education. It does not provide educational services or other educational programs in this district. That it solicits and enrolls students from this district and receives tuition income from them does not supply the necessary contacts.

Dickinson College is located in Cumberland County, which is in the Middle District of Pennsylvania. 28 U.S.C. § 118(b). It is not subject to personal jurisdiction in this district. It, like all the other defendants, is a resident of the Middle District of Pennsylvania where the events giving rise to MacMillan-Bell's claim occurred. Therefore, pursuant to § 1391(b)(1) and (2), venue lies in the Middle District.

When an action is filed in the wrong district or division, the court may either dismiss the action or, in the interests of justice, transfer it to any district in which it could have been brought. *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."); *see also QRG, Ltd. v. Nartron Corp.*, No. 06-500, 2006 WL 2583626, at *3 (W.D. Pa. Sept. 7, 2006). The interests of justice are better served by transferring this action rather than dismissing it. Therefore we shall grant the defendants' motion to the extent it seeks transfer to the Middle District of Pennsylvania.